# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 4, 2021

Lyle W. Cayce
Clerk

No. 19-11332

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

BRYAN KEITH MILLER,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-165-1

Before JONES, SMITH, and ELROD, *Circuit Judges*.
PER CURIAM:*

After two police officers spotted methamphetamine in Bryan Miller's car, they arrested him and searched his vehicle. The search turned up several explosive devices, and Miller was charged with a violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 for possessing them. Miller moved to have the explosives suppressed as evidence obtained in an unlawful search. The

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

district court denied his motion.  He later pleaded guilty to the possession charge but now appeals the district court's denial of his motion to suppress. We AFFIRM the district court's order.

## I.

Shortly after midnight on December 26, 2019, police responded to a 911 call reporting a possible burglary at a business in Kennedale, Texas.  The caller stated that three people had gathered near a silver vehicle outside the business.  When Officer Kjelsen arrived at the business, he found a white Dodge Charger with Oklahoma license plates.  Officer Kjelsen called his dispatcher, who then contacted the original caller to confirm that the Dodge Charger was the correct vehicle.

Before hearing back from dispatch, Officer Kjelsen exited his own vehicle and went to speak with Miller, who was exiting from the passenger side of the Charger.  He asked Miller why he was there, to which Miller responded that he knew the business owner and was waiting to say hello to the him in the morning.  Officer Kjelsen explained to Miller that someone had complained about a possible burglary involving three people.  Miller stated that he had been in the parking lot since 11:00 p.m. and had seen no one else.

When Officer Kjelsen asked whether Miller had any weapons with him, Miller responded that he had a pocketknife.  Officer Kjelsen patted Miller down and confirmed that Miller had a pocketknife and a tactical pen. When asked if there were any guns in the vehicle, Miller responded that there were none.  Through the windows of the vehicle, Officer Kjelsen could see that the back seat was full of backpacks and luggage and that the front seat contained a baseball bat.  Miller explained that he used the baseball bat at batting cages to relieve stress.

Miller told Officer Kjelsen that he lived in St. Louis, Missouri, but his driver's license and the car's license plates were from Oklahoma.  Miller

claimed that he had only recently moved to Missouri.  Officer Kjelsen checked Miller's Oklahoma ID and learned that Miller was the subject of a warrant from 2015 out of Arlington, Texas, for criminal mischief.

At about this time, Officer McDonald arrived.  Officer McDonald contacted the 911 caller, who stated that he had definitely seen three people standing around the Dodge Charger and that he had been watching Miller until the officers arrived.  While Officer Kjelsen kept inspecting the vehicle from the outside, Officer McDonald asked Miller to call the business owner.  Because the officers had not yet finished their investigation, Miller gave Officer McDonald permission to retrieve his phone from the interior of the car.  Miller looked through his phone but could not find the business owner's phone number.

Officer Kjelsen obtained the business owner's contact information from the dispatcher but could not reach him and left a message.  The officers asked for permission to search Miller's car, which he refused to give.  Officer Kjelsen then looked into the driver's window of the car and saw a white, crystalline substance on the floor that he believed to be methamphetamine.  Officer McDonald looked and agreed that it was methamphetamine.

At that point, the business owner called Officer Kjelsen back and said that he knew Miller, but he was not expecting to meet Miller in the morning.  Officer Kjelsen ended the call and told Miller he believed there was methamphetamine in the car.  Miller denied having any drugs and said that the substance on the carpet was probably sugar.  Officer Kjelsen retrieved a field-testing kit and extracted some of the substance from the floor for testing.  It was methamphetamine.

Officer Kjelsen handcuffed Miller, read him his rights, and searched Miller's vehicle.  The search revealed more methamphetamine, various drug paraphernalia (including scales with methamphetamine residue on them), military-style clothing, camouflage netting, a sniper suit, rifle ammunition,

and plate armor.  In the trunk, Officer Kjelsen found a bag containing several PVC pipe bombs, which Miller claimed were for removing tree stumps.

On May 22, 2019, Miller was charged with one count of violating 26 U.S.C. §§ 5841, 5861(d), and 5871 for possessing the explosive devices. Miller filed a motion to suppress the evidence obtained from his car, arguing that the search was illegal because it was based on the unlawful seizure of the substance on the floor of his car.  The district court did not hold an evidentiary hearing.  Instead, it relied on undisputed facts laid out in the police report and denied Miller's motion.  He pleaded guilty to the possession charge in August 2019.  He was subsequently sentenced to 46 months in prison.  He now appeals, seeking to have the district court's denial of his motion to suppress reversed and his case remanded to the district court.

## II.

When considering a motion to suppress, we review questions of law *de novo* and factual findings for clear error.  *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001).  Evidence is construed in the light most favorable to the prevailing party, in this case the government.  *United States v. Cantu*, 230 F.3d 148, 150 (5th Cir. 2000).  A district court's ruling on a motion to suppress "should be upheld if there is any reasonable view of the evidence to support it."  *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (internal quotation marks and citation omitted).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  To seize personal property, police officers generally need a warrant. However, the plain-view exception permits police to seize items without a warrant where: "(1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the

incriminating nature of the item was 'immediately apparent;' and (4) the police had a lawful right of access to the item." *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990)).    Miller argues that Officer Kjelsen's seizure of the methamphetamine did not fall under the plain-view exception because the incriminating nature of the substance on the floor of his car was not immediately apparent.

We have explained that "[t]he incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or contraband." *Id.* (quoting *United States v. Waldrop*, 404 F.3d 365, 369 (5th Cir. 2005)).  For probable cause to exist, "it is not necessary that the officer know that the discovered res *is* contraband or evidence of a crime, but only that there be 'a "practical, nontechnical" probability that incriminating evidence is involved.'" *United States v. Espinoza*, 826 F.2d 317, 319 (5th Cir. 1987) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).  "In reviewing probable cause determinations, we must consider the totality of the circumstances—including the officers' training and experience as well as their knowledge of the situation at hand." *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1995).

We have previously held that when an officer identifies an illegal substance based on experience and training, that officer has probable cause to seize the substance. *See United States v. Kalie*, 538 F.2d 1201, 1202–03 (5th Cir. 1976) (holding that probable cause existed where a border patrol agent saw nothing more than glimpses of aluminum foil and marijuana debris in the bed of a pickup truck); *United States v. Dixon*, 525 F.2d 1201, 1201 (5th Cir. 1976) (holding that probable cause existed where an officer saw only "what appeared to be marijuana seeds" inside the vehicle).  Probable cause is further supported when the attendant circumstances point toward illegal activity. *See United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016).

No. 19-11332

The totality of the circumstances in this case supports probable cause. The police were responding to a credible report of potential criminal activity. Officer Kjelsen confirmed that Miller was the subject of that report. Miller's interactions with Officer Kjelsen were also suspicious. He denied having seen anyone else in the parking lot, though the informant was adamant that there had been two others there with Miller. Miller's explanation for being in an empty parking lot in the middle of the night was dubious, and it was later contradicted by the owner of the business. He gave questionable answers to several of Officer Kjelsen's questions, leading Officer Kjelsen to believe that Miller was trying to hide something.

Officer Kjelsen also positively identified the methamphetamine based on his training and fourteen years of experience as a police officer. He confirmed his suspicions with Officer McDonald. In short, as soon as they arrived the officers had reason to believe that Miller was engaged in criminal behavior. Spotting the methamphetamine only confirmed those suspicions. The officers had probable cause to seize the methamphetamine from Miller's car.[1]

### III.

The district court's judgment is AFFIRMED.

---

[1] Miller also argues that the automobile exception does not justify the search of his car. However, this issue was not presented before the district court, and we do not address issues on appeal that were not raised in the district court. *See Vela v. City of Houston*, 276 F.3d 659, 678 (5th Cir. 2001).